OPPENHEIMER *v.* TELHIARD.

[85 South. 134, In Banc. No. 21051.]

1. SALES. *Written lease covering furniture held to constitute sale under Louisiana law.*
   A so-called written lease whereby a furniture merchant of New Orleans, La., delivered to his lessee or customer a suit of furniture at his New Orleans residence, examined, and under the Louisiana law construed as a sale.

2. SALES. *Agreement for sale of furniture held to authorize purchaser to sell.*
   Under a written contract whereby a furniture merchant delivered a suit of furniture to his customer, the terms of which require the customer to pay unconditionally the full amount of the purchase price and provide that title should pass on payment of the agreed consideration, the purchaser may sell the property, and the buyer may pay or tender the balance due and retain or defend his possession.

3. JUSTICES OF THE PEACE. *Deposition of nonresident witness may be taken in civil suit and is available to either party.*
   Under sections 1925, 1928, and 1931, Code of 1906 (sections 1585, 1588, and 1591, Hemingway's Code), the deposition of a nonresident witness may be taken in a civil cause before a justice of the peace the same as in the circuit court, and when received by the justice such deposition is filed and deposited among the papers in the cause and may be introduced by either party.

4. JUSTICE OF THE PEACE. *Deposition of nonresident witness should be certified on appeal to circuit with original papers.*
   The deposition of a nonresident witness taken for use in the trial of a civil cause before a justice of the peace should on an ap-

peal from the justice court to the circuit court be certified by the justice of the peace along with the original papers and process, and, when lawfully taken and certified, may be introduced on the trial *de novo* in the circuit court.

5. Trial.   *Instruction directing jury to fix value of furniture at stated sum without competent evidence held erroneous.*

In a replevin suit for the possession of a suit of furniture, an instruction which directs the jury to fix the value at a stated sum without any competent evidence is erroneous.

6. Deplevin.   *Value of articles of furniture should on finding for plaintiff be assessed separately.*

The jury in a replevin suit over articles of furniture should, in finding for plaintiff, assess the value of each article separately.

Appeal from circuit court of Hancock county.

Hon. D. M. Graham, Judge.

Replevin by Mrs. Nannie Telhiard against Mrs. Jos. Oppenheimer, brought before a justice of the peace. A judgment by default was rendered and on trial *de novo* in the circuit court plaintiff recovered judgment, and defendant appeals. Affirmed as to liability, and reversed and remanded as to damages.

*McDonald & Marshall,* for appellant.

Is a conditional sale recognized by the law of Louisiana, in which state the contract of sale involved in the case at bar was executed? A conditional sale of a chattel, as known to the jurisprudence of Mississippi, is not recognized by the supreme court of Louisiana. An executory contract of sale, or a contract of sale with a "suspensive condition" is given full effect in that state; the contract of sale becoming operative only upon performance of the "suspensive condition." *Barbara Asphalt Paving Company* v. *St. Louis Cypress Company,* 46 So. 193 (bottom of left hand column, page 198).; *William Frantz & Company* v. *Fink,* 52 So. 131.

The question of whether Moss became the owner of the goods (so as to be able to convey a valid title to a third party, the defendant in an action for the goods) or not depends upon what was the agreement of the parties. The parties had a perfect right to make any agreement they chose in that regard. The right conferred upon Moss by that agreement were: "(1) To become owner of the goods on paying the price set upon them; (2) to sell the goods to some one else at a cash price of not less than that set upon them. The right was not conferred upon him to buy the goods on a credit; or, in other words, to become debtor to plaintiff for the price of the goods . . . The goods were not sold to him, and the only way in which he could become the owner of them was by paying cash for them." Page 137, left-hand column of 52 So.; *Girault, v. Fencht,* 117 La. Ann. 276, 41 So. 572; *Baldwin v. Morey,* 41 La. Ann. 1105,— So. 796.

Such was the case at bar. There was no sale to Nolan embodied in this written contract. Scarcely could it be said that there was an executory contract of sale, because Nolan was not by this contract absolutely obligated to buy, hence, title did not pass. "The reason why a sale under a suspensive condition does not transfer the ownership is that it is not a sale." *Barbara Asphalt Paving Company v. St. Louis Cypress Company, supra.* The contract being not one of absolute sale, and, at the farthest stretch there being only a contract with a "suspensive condition" and this condition never being performed, title never passed from Oppenheimer to Nolan. Nolan never having acquired title, he could transfer or confer none. *Frantz & Company v. Fin, supra.*

II.  Could the contract be construed as one of lease under the laws of Louisiana? We submit that the contract was purely one of lease, and nothing else, under the decisions of both the supreme court of Louisiana

and the supreme court of Mississippi. To hold other-
wise would be making a contract for the parties other
than that entered into by them. *Puffer Manufacturing
Company* v. *William A. Dearman,* (*The Cyclone case*),
97 Miss. 622, 54 So. 310; *Selig* v. *Dumas,* 48 La. Ann.
——, 21 So. 91; *Barbara Asphalt Paving Company* v.
*St. Louis Cypress Company, supra.*

Was Mr. H. J. Nolan in default at the time Oppen-
heimer's agent took possession of the goods? That he
was is conceded by everyone connected with the case.
Upon a rental of ten dollars per month, he owed over
forty-four dollars. If the contract is a lease, can
it be said that the lessee had an option to buy or pay
the price and was the option exercised in this way?

The contract being a lease, the lessee probably did
have a personal option to buy, or to pay the price, and
thus to become owner by performance of this "sus-
pensive condition" in this conditional option—which is,
of course, the case with every option. The contract
provided that only he, if anyone, could exercise the
option, and the option could be exercised, if at all, only
when the signed receipt of Mr. Oppenheimer should be
given. *Fresno Home Packing Company* v. *A. J. Lyon
and Company,* (Mississippi), 53 So. 585; *Check-Neal
Coffee Company* v. *Morrison Hinton Grocery Company,*
96 Miss. 835, 51 So. 1; *Red Snapper Sauce Company* v.
*Bolling,* 95 Miss. 752; *Gross* v. *Todd,* 94 Miss. 168, 47
So. 801.

Now whether the contract between Oppenheimer and
Nolan was one of lease or of absolute sale, a balance of
forty-four odd dollars remained due to Oppenheimer on
the transaction from Nolan. Accordingly, the letter
from Nolan to Oppenheimer, which cannot be varied
by a showing of supposed contemporaneous or prior
negotiations, from the moment of mailing, constituted
an absolute sale back to Oppenheimer. *E. L. Trenhold,
Trustee,* v. *Mary R. Miles,* 102 Miss. 835, 59 So. 930;

*E. E. Forbes Piano Company* v. *Hennington* (Miss.), 67 So. 483.

Even if Mrs. Nolan had been a validly constituted agent of her husband to sell the goods, her authority was automatically revoked by his sale. *Kolb* v. *Bennett Land Company*, 74 Miss. 567, 21 So. 233.

In conclusion, we thank the court for the close attention it has given this cause, which does not involve interests of magnitude.

*Gex & Waller*, for appellee.

We fail to catch the significance of the statement which our friends say is supported by the case of *Barber Asphalt Paving Company* v. *St. Louis Cypress Co.*, 46 So. 193. That case holds as unmistakably and in as clear language as possible for logic and reason to express itself that in Louisiana a contract of sale with reservation of title is an impossibility. At page 194, left-hand column, in the opinion in that case, in dealing with that proposition, the Louisiana court said:

"The plaintiff company's position is that the contract can and should be enforced as made, that is to say, that Hoyt should owe the price without ever having become the owner of the thing; and that it, plaintiff company, should be held to have continued to be owner of the thing and yet to have become the creditor of Hoyt for the purchase price. Such a contract appears to us to be legally impossible."

Again the court states, page 196, right-hand column: "The essentials of a sale are; A thing, the property in which is transferred from the seller to the buyer; and a price in money paid or promised. Civ. Code, art. 2439. It follows from this that to suppose a sale without a transfer of the property or thing, which forms the object of the sale is simply to suppose an impossibility. Either, therefore, the ownership of this shovel

was transferred to Hoyt and the stipulation of conditional ownership must be disregarded or else there was no sale made to him. The latter supposition is inadmissible; because not only the allegation is that there was a sale made, but the plaintiff company has in its pocket a part of the price, and is not offering to restore it. The rule in the interpretation of contracts is that any stipulation which is found to be inconsistent with the intent of the parties as collected from the whole instrument must be disregarded. 9 Cyc. 583. In this case the manifest intention of the parties was that there should be a sale and the stipulation of continued ownership is inconsistent with that intention."

And that is the gist of the holding of the court in that case. As far as the case of *William Frantz & Company* v. *Fink,* 52 So. 131, is concerned, we submit that that case has no application at all here.

Counsel in their brief say that the contract in the case at bar was not a sale, because Nolan was not obligated to buy or to pay any specific sum. We submit that the contract itself shows to he contrary. T he first line of the agreement is as follows: "I, the under signed (meaning Nolan) hereby agree to pay without defalcation, to Joseph Oppenheimer . . . the sum of one hundred and seventy-two dollars." If that agreement supported by a consideration, does not create an obligation to pay, we are unable to explain to the court how such an obligation can be created.

Following appellant in their answer to the second question propounded by this court, we submit that un der no interpretation of the contract at issue, could it be considered a contract of lease. As hereinabove stated, the parties themselves stated throughout their testimony that the contract was one of sale. Oppenheimer in the testimony hereinabove referred to, and by the way, the only testimony given by him on that subject, says that it was a contract of sale, and not of lease.

That whenever the purchaser should have paid the purchase price, the title would vest in him. That all that was necessary for him, the purchaser, to do was to pay the purchase price, and of course, not even counsel on the other side controvert the proposition that when a contract is ambiguous, the interest of the parties must govern. In this case, the undisputed facts are that both of the parties considered the contract as one of sale, and so intended it.

Again if this contract must be interpreted under the Louisiana law, we submit that under that law, by virtue of the authority of *Selling* v. *Dumas*, 21 So. 91, that the Louisiana supreme court has placed itself on record on the proposition that such a contract can never be interpreted as one of lease. The court asks if the contract was a lease under the Louisiana law, was Mr. Nolan in default at the time Oppenheimer's agent took possession of the furniture, and if not what are the rights of the lessee or his assignee, if any?

To answer that question we must divide it, of course in three parts. 1. We say that the contract was not of lease, but one of sale, as hereinabove set out, under the Louisiana decisions, because as stated above, this contract is considerably plainer as one of sale than those which the Louisiana court held were contracts of sale, and not of lease.

2. But assuming, for the sake of argument, that it was a lease, we say that at the time Oppenheimer's agent took possession of the furniture, Mr. Nolan was not in default. That of course, is a question of fact.

3. Certainly under the contract, the lessee—which we might term Nolan for the sake of argument—or his assignee, Mrs. Telhiard, had the right to tender the money due under the contract of sale, or lease, if you please to call it, and on payment of all that was due, if that were possible in Louisiana, to have the title vested in her. In the first line of this contract—that is, in reference to the

conditions of the contract, it will appear that the purchaser agrees to pay Oppenheimer or his agent a certain sum, which is called "for rents," and that no sale is implied, nor shall one be deemed valid, without a receipt from Oppenheimer or his authorized collector, but it is certainly provided by the contract—and as testified by Oppenheimer as hereinabove referred to—that on the completion of the payment of the amount due by the lessee, even if the contract could be considered; one simply to lease, that the title would pass to the lessee.

Certainly if the lessee had any right under this contract interpreting it to be a lease, that right was to obtain the property on the payment of the last installment. The contract so provides. Respectfully submitted.

STEVENS, J., delivered the opinion of the court.

This action is one of replevin instituted by appellee. Mrs. Telhiard, in a justice of the peace court of Hancock county, to recover from appellant possession of certain articles of furniture, which the officer executing the writ values in the total sum of seventy-five dollars. The defendant executed a forthcoming bond in the sum of one hundred and fifty dollars and retained possession. The defendant suffered judgment by default to be rendered in the justice of the peace court, but while the cause was pending in said court appellee, as plaintiff. had taken the deposition of one H. J. Nolan, a nonresident witness. This disposition was taken in the way provided by statute and is in due form. The defendant prosecuted an appeal to the circuit court, where the parties joined issue and had a trial of the cause anew on its merits. Upon the trial the plaintiff introduced in evidence the entire file of papers which the justice of the peace had certified as a record in the case, and specifically introduced and read to the jury the deposition of the witness Nolan. This action was taken over the ob-

jection of the defendant, who duly reserved an exception to the ruling of the court. The real controversy arises out of the following facts: Joseph Oppenheimer, the husband of appellant, being in a retail furniture business in the city of New Orleans, La., on February 16, 1917, delivered possession of a suit of furniture, the subject of this litigation, to one H. J. Nolan, under a contract in writing which reads as follows:

"This agreement witnesseth that I, H. J. Nolan, of New Orleans, residing at No. 1738 Clio street, between Carondelet and Baronne, have this day rented from Jos. Oppenheimer the following articles described below:

"The whole value at one hundred and seventy-two dollars, for the term of ——·— months, subject to the following conditions:

"I, the undersigned, hereby agree to pay without demand to Joseph Oppenheimer, or his authorized agent, as rent on said article or articles, the sum of twenty dollars in advance, and the sum of two dollars and fifty cents to be collected on Tuesday of each week until the full amount herein is paid thereon, and that no sale of said article or articles is implied, nor shall a sale be deemed valid without a receipt from Joseph Oppenheimer, or his authorized collector, and I further agree that I will not sell, sublease, transfer, loan, pawn, give away or remove said article or articles from my house or place of residence except in case of fire, without the written consent of Jos. Oppenheimer, indosed thereon, and I further agree that any neglect on my part to pay the rent as stipulated in this contract will enable Jos. Oppenheimer, or his duly authorized collector, to take or cause to be taken said article or articles from my house or residence or wherever it may be and also that Jos. Oppenheimer, or his duly authorized collector or agent, shall not be guilty of a trespass thereby; and I further agree to forfeit all that has been paid thereon, and waiving all exemption laws, and that there is no alterations

or modifications of this contract either in writing or verbal now existing.

"[Signed] H. J. NOLAN, Proprietor ———."

Under the terms of the contract Mr. Nolan obligated himself not to move the furniture without Mr. Oppenheimer's consent. In 1918 Mr. Nolan moved to Bay St. Louis, Miss., and there rented a residence from one Mrs. Fayard, and removed the furniture in question to his Bay St. Louis residence. This removal was in pursuance of an express agreement and consent of Oppenheimer. Mr. Nolan kept up his payments until all but forty-four dollars had been paid. In November, 1918, Mr. Nolan decided to move to Houston, Tex., and just what action and agreements were had and made in reference to the furniture at this time is the subject of some controversy and some possible conflict in the testimony. According to the facts as found by the jury, Mrs. Telhiard, the appellee, purchased the property from Mr. and Mrs. Nolan and tendered Oppenheimer the balance of forty-four dollars due by Mr. Nolan under his contract. It appears that Mr. Nolan left Bay St. Louis before appellee agreed to purchase, but in leaving Mr. Nolan, the husband, authorized his wife, Mrs. Nolan, to sell the furniture. As Mr. Nolan went through New Orleans he authorized Mr. Oppenheimer to take charge of the property in consideration of the further payments due, and, acting under this authority, Mr. Oppenheimer sent his agent to Bay St. Louis and took possession and removed the furniture from the Fayard residence to a residence which Mr. Oppenheimer himself owned in Bay St. Louis. This was over the objection and protest of Mrs. Telhiard, the purchaser, who instituted this action of replevin, claiming title as a purchaser from the Nolans, and again tendered and subsequently in court tendered the forty-four dollars. In his deposition Mr. Nolan testifies that he authorized Mr. Oppenheimer to take charge of the furniture only in event

Mrs. Nolan failed to consummate a sale. There is testimony tending to show that Mrs. Nolan did in fact consummate a sale before Mr. Oppenheimer's agent took possession. The cause was submitted to the jury under instructions for both parties, and the verdict returned in favor of appellee and fixing the value of the property at one hundred and fifty dollars. It appears that there is no actual proof of value except the officer's return, and this return does not undertake to value each article of furniture separately, but states a total valuation of seventy-five dollars. The jury did not in their verdict value the articles separately. This action was no doubt had by the jury in pursuance of instruction No. 1 for the plaintiff, which reads:

"The court instructs the jury for the plaintiff that, if you find for the plaintiff, the form of your verdict shall be: 'We, the jury, find for the plaintiff and assess the value of the furniture at one hundred and fifty dollars.' "

There are several contentions why the judgment based upon this verdict should be reversed. The material assignments submit that the written contract is one of lease, and not a conditional sale, and Nolan had no title to sell; secondly, whether the contract is to be viewed as one of lease or conditional sale, the title itself never passed until the full amount of the purchase price should be paid, and the purchaser, or the assignee of the purchaser, could not maintain replevin, but must be remitted to an action in damages for nonperformance; thirdly, that the sale between the Nolans and appellee was not consummated before Mr. Oppenheimer took charge of the property and delivered it to Mrs. Oppenheimer in Bay St. Louis; fourthly, that instruction No. 1, there being no actual proof of value other than the officer's return, is erroneous; fifthly, that the alternative verdict of the jury fixing the value at one hundred and fifty dollars and the judgment of the court based

thereon are erroneous; sixthly, that the trial of the cause in circuit court was *de novo*, and it was error for the plaintiff to introduce the deposition of the witness Nolan taken for use in the justice of the peace court; seventhly, on the trial the court permitted, over the objection of appellant, testimony of the parties detailing the circumstances under which the furniture was purchased and the construction which the parties themselves placed upon the contract. One illustration of this testimony may be found in the following questions and answers of Mr. Oppenheimer himself:

"Q. In other words, your agreement or your understanding with the purchaser when he buys this stuff (referring here to the furniture at issue) before he executes the contract is that you retain a vendor's lien on the stuff for the purchase money. A. Yes, sir.

"Q. And your lien is paid when he pays the amount owed on it. A. Yes, sir.

There are other assignments, but they are not pressed in counsel's argument, and need not, we think, be seriously considered.

It affirmatively appears that Mr. Oppenheimer was a merchant in the furniture business in the city of New Orleans, and there delivered to H. J. Nolan the articles of furniture in litigation at an agreed valuation of one hundred and seventy-two dollars. The property was delivered to Nolan at his New Orleans residence, and there remained for a material length of time. The contract then is beyond question a Louisiana contract, and should be construed according to the law of Louisiana. Under the authority of *Barber Asphalt Paving Co.* v. *St. Louis Cypress Co.*, 121 La. 152, 46 So. 193, a conditional sale of movables is under the Louisiana law impossible.

A condition sale in Mississippi is not only possible, but expressly recognized by our authorities. But any elaborate discussion either of the Louisiana or Mississippi authorities in reference to a so-called conditional

sale is unnecessary.  It is beyond question that the parties to the contract construed the instrument as one of sale and not of lease.  The first declaration in the agreement says:

"I, the undersigned, hereby agree to pay without demand to Joseph Oppenheimer or his authorized agent" the consideration agreed upon.

The property was delivered upon the execution of the writing, and thereafter remained in the possession of the purchaser.  The balance of forty-four dollars was tendered by appellee for and on behalf of the purchaser. The tender was first declined upon the theory that the amount was too small.  It matters little what nomenclature is employed in construing the contract, whether it is called an executory contract of sale or a contract of sale with a "suspensive condition."  The contract itself provides that title shall pass on payment of the full amount of consideration agreed upon.  An effort was made in good faith to pay the balance due and the payment was refused.  On the merits of the case we see no error.

On the trial in the circuit court plaintiff, over the objection of the appellant, introduced the deposition of H. J. Nolan.  This deposition had been taken while the cause was pending and for use in the justice of the peace court.  Objection is based upon the statutory provision that the trial upon appeal is *de novo,* and the contention made that the deposition was competent testimony in if desired for use in the circuit court.  We are of the opinion that the deposition was competent testimony in the circuit court.  Under sections 1925, 1928, and 1931, Code of 1906 (sections 1585, 1588, and 1591, Hemingway's Code) it is permissible to take the deposition of a nonresident witness in a civil cause before a justice of the peace the same as in the circuit court, and, when lawfully received by the justice, such deposition is filed and deposited among the papers in the cause.  When taken

in accordance with the statute, it may be introduced on the trial by either party. Under section 85, Code of 1906 (section 65, Hemingway's Code), the justice of the peace "shall at once transmit to the clerk of that court a certified copy of the record of the proceedings, with all the original papers and process in the case, and the original appeal bond." We think a fair interpretation of this statute requires a justice to certify to the circuit court the deposition of a nonresident witness along with the other original papers in the cause. This was done in the present case, and there was no objection by way of motion to suppress or any showing of irregularity in the commission or the taking of the deposition. If the deposition of Mr. Nolan was competent and relevant in the justice of the peace court, it was relevant to the same issues upon appeal in the circuit court. This interpretation of the statute promotes justice and saves costs. It would be an idle and useless task to retake the deposition of a nonresident witness simply because the case had been appealed to the circuit court. The statute authorizes the introduction of valuable papers as exhibits to such deposition; and these exhibits and vouchers are required to be sealed up and directed to the justice along with the deposition and remain on deposit "among the papers in the cause." If it were required that the nonresident witness be re-examined for the circuit court trial of the same case, it would be necessary to withdraw exhibits on file and return them to the witness for reintroduction and reidentification. We do not believe the legislature intended to require such an unnecessary and inconvenient proceeding. The objection to the deposition was properly overruled.

But instruction No. 1 granted the plaintiff necessitates a reversal and a remand for a proper assessment of valuation of the property. Both the instruction and the verdict based thereon fix the value of the furniture at one hundred and fifty dollars without any evidence, and

without any effort on the part of the jury to assess each article of furniture separately. The cause will accordingly be affirmed as to the right of appellee to recover the property, but reversed for the proper valuation of the various articles of furniture upon proper writ of inquiry.

*Affirmed as to liability.*

*Reversed and remanded as to damages.*